UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALLACE SALES & CONSULTING, LLC,

Plaintiff/Counter Defendant,

v.

TUOPU NORTH AMERICA, LIMITED,

Defendant/Counter Claimant.

Case No. 15-cv-10748

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [38]**

**I. INTRODUCTION**

On March 2, 2015, Wallace Sales & Consulting, LLC ("Plaintiff") filed a Complaint and Demand for Trial by Jury against Tuopu North America, Limited ("Defendant"), alleging breach of contract and seeking a declaratory judgment. *See* Dkt. No. 1. Plaintiff amended its Complaint on August 28, 2015 and added an additional count, alleging violation of Michigan's Sales Representatives Commission Act (SRCA), MICH. COMP LAWS § 600.2961. *See* Dkt. No. 28, p. 5 (Pg. ID No. 547).

Presently before the Court is Defendant's Motion for Partial Summary Judgment [38], addressing Plaintiff's SRCA claim. The matter is fully briefed and a hearing was held on April 11, 2016.

-1-

For the reasons discussed herein, the Court will **GRANT** Defendant's Motion for Partial Summary Judgment [38].

## II. BACKGROUND

Plaintiff is a Michigan limited liability company with its principal place of business located in Brownstown, Michigan. Plaintiff is a sales representative firm in the automotive industry, whose sole member is James Wallace ("Wallace"). Defendant is an Ontario, Canada corporation with its principal place of business located Pickering, Ontario. Defendant is a subsidiary of Ningbo Tuopu Group Co., Ltd., a Chinese manufacturing conglomerate, and functions as the North American supplier of Ningbo Tuopu's automotive suspension parts.

Defendant first retained Plaintiff as its sales representative pursuant to a written agreement in 2007. Plaintiff primarily called on Chrysler, LLC at its headquarters in Auburn Hills, Michigan, soliciting orders for Defendant's products to be shipped to Chrysler plants and Chrysler's tiered suppliers located in Mexico, Canada, and the United States. Plaintiff alleges that its success in procuring business for Defendant helped Defendant's annual sales reach $35 million by 2011.

In December 2011, the Plaintiff and Defendant executed a new written Manufacturer's Representative Agreement (hereinafter "the Agreement"), under which Plaintiff served as an independent manufacturer's representative. The

Agreement became effective on January 1, 2012. Wallace signed the Agreement on December 30, 2011 and specifically initialed each page of the Agreement.

The Agreement included detailed provisions governing the sales commissions that Defendant would be required to pay to Plaintiff in the event of termination, which varied based upon whether Plaintiff's termination was "without cause" or "for cause." If Defendant terminated Plaintiff "without cause," it was required to continue paying sales commissions to Plaintiff on all sales for which an order or quotation was received prior to December 31, 2014. However, if Defendant terminated Plaintiff "for cause," it was only required to pay Plaintiff commissions on parts shipped during the one-month period following the effective termination date.

Additionally, the Agreement specified that any disputes related to the Agreement may be brought in Ontario, Canada and shall be governed solely by Ontario, Canada law:

> 17.2 **Selection of Forum and Choice of Law**. This Agreement shall be interpreted solely in accordance with, and it shall in all respects be governed by, the law of the Province of Ontario, including laws or rules of court regarding the service of process. The parties expressly consent to the jurisdiction of the courts of the Province of Ontario, in any action to enforce or interpret the terms of this Agreement.

The parties' allegations diverge as to the quality of Plaintiff's work for Defendant. Plaintiff asserts that by 2014, the orders it procured were resulting in sales of approximately $39 million per year, with the expectation that sales would

-3-

increase to over $50 million for 2016, 2017, and 2018. Conversely, Defendant alleges that the parties' working relationship was problematic, due to Plaintiff's failure to work well with Defendant's staff. Defendant's president made the decision to terminate Plaintiff in October 2013, but waited until finding a replacement to officially terminate Plaintiff.

On July 11, 2014, Defendant sent Plaintiff notice of termination, effective immediately. The termination notice stated that the "termination is due to financial reasons and is without cause." Additionally, the letter provided that Defendant would pay Plaintiff sales commissions through December 31, 2014.

Plaintiff filed the original Complaint in the present suit on March 2, 2015, claiming breach of contract and seeking a declaratory judgment. *See* Dkt. No. 1. On July 14, 2015, Plaintiff filed a motion for leave to amend its complaint, adding a count alleging a violation of SRCA, to which Defendant objected. *See* Dkt. No. 16. On August 28, 2015 this Court granted Plaintiff's motion for leave to amend its complaint. Dkt. No. 27.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts,

and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## IV. DISCUSSION

On August 28, 2015, the Court issued an Opinion and Order granting Plaintiff's Motion for Leave to File a First Amended Complaint. Dkt. No. 27. The parties agreed that Ontario law applies to the contract as a whole, but maintained opposing views as to whether Plaintiff should be allowed to add a third claim for a violation of SRCA, which does not exist under the law of Ontario. At that time, given the lenient standards for granting leave of court, the Court allowed the claim to be added. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). The question is now before the Court again, subject to the standard governing summary judgment.

### A. Choice of Law Principles

The determination of whether Plaintiff's SRCA claim may proceed past summary judgment hinges on whether Ontario or Michigan law applies to this specific claim. A federal court whose jurisdiction is based on diversity of citizenship applies the choice-of-law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). In this case, the forum state is Michigan, whose courts have adopted §§ 187 and 188 of the Restatement (Second) of Conflict of Laws. *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 448 Mich. 113, 120, 528 N.W.2d 698, 701 (1995).

The "[p]rime objectives of contract law are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." *Id*. at 125, 703 (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 comment e (1971)). Nevertheless, "fulfillment of the parties' expectations is not the only value in contract law; regard must also be had for state interests and for state regulation." *Id*. (quoting RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 comment g (1971)).

Section 187(2) of the Restatement (Second) of Conflict of Laws provides:

The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

    a. the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

    b. application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2) (1971). Courts are to "move cautiously when asked to hold contract clauses unenforceable on public policy grounds." *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 362 (6th Cir. 1993) (quoting *Moses v. Business Card Express, Inc.,* 929 F.2d 1131, 1139 (6th Cir.), *cert. denied,* 502 U.S. 821 (1991)).

Where there has not been an effective choice of law, Michigan's choice of law rules "require a court to balance the expectations of the parties to a contract with the interests of the states involved to determine which state's law to apply." *Mill's Pride, Inc. v. Cont'l Ins. Co.*, 300 F.3d 701, 705 (6th Cir. 2002).

## B. Count 3: Violation of Michigan Sales Representatives Act

The purpose of the SRCA is "to ensure that sales representatives in Michigan are paid the full commissions to which they are entitled." *Howting-Robinson Assocs., Inc. v. Bryan Custom Plastics*, 65 F.Supp.2d 610, 613 (E.D. Mich. 1999) (citing *Walters v. Bloomfield Hills Furniture*, 228 Mich. App. 160,

577 N.W.2d 206 (1998)). Defendant argues that this claim fails because Ontario law applies to the parties' contract, due to the agreement's choice-of-law provision. Plaintiff responds that Michigan law should apply to its SRCA claim, because applying Ontario law would abrogate a fundamental policy of the State of Michigan.

### 1. Divergent Precedent

Each party has cited cases in support of their arguments for which law should apply to Plaintiff's SRCA claim. Defendant relies on *Johnson v. Ventra Grp., Inc.*, 191 F.3d 732 (6th Cir. 1999), and *Milne v. Accurcast, Inc.*, No. 08-13643, 2010 WL 374176 (E.D. Mich. Jan. 25, 2010), in support of its argument that the Court should not allow a claim for SRCA to proceed when all other elements of the Agreement are governed by Ontario law. In *Johnson*, the Sixth Circuit determined that a plaintiff could not bring a SRCA claim against his employer's successors because Ontario law governed the case and because SRCA was not enacted until four years after the plaintiff was terminated. 191 F.3d at 749. In *Milne*, Judge Battani found that Ontario had a substantial relationship to the parties and transaction and that Michigan did not have a materially greater interest than Ontario in the outcome of the suit, compared to Ontario. *Id*. at *6. *See also David Eng'g Co. v. Morbern Inc.*, No. 11-12615, 2012 WL 3109919, at *3 (E.D. Mich. July 31, 2012) (noting that in a prior order, the court enforced the Ontario

choice of law provision and dismissed the plaintiff's SRCA claim under Ontario law).

Plaintiff relies on *Howting–Robinson Assocs., Inc. v. Bryan Custom Plastics*, 65 F.Supp.2d 610 (E.D. Mich. 1999),[1] in support of its argument that the Court should allow Plaintiff to bring its SRCA claim, because to hold otherwise would be against the fundamental policies of the State of Michigan. In *Howting–Robinson*, the court allowed the SRCA claim to proceed, finding that "Ohio ha[d] a far less substantial relationship to the contract" and that applying Ohio law would violate "a specific legislatively expressed public policy of the State of Michigan and therefore should not be enforced." 65 F. Supp. 2d at 613 (noting that the place of performance and location of the subject matter was Michigan, and that negotiation and execution of the contract took place in Michigan).

Other recent cases have also analyzed Michigan's interest and relationship to the parties in SRCA choice-of-law disputes. *See, e.g., Trilogy Mktg., Inc. v. Memsic, Inc.*, No. 12-13967, 2014 WL 4265788 (E.D. Mich. Aug. 29, 2014) (finding Michigan did not have a more substantial relationship to the parties than their contractual choice of Massachusetts, due to reliance on Michigan's "strong

---

[1] Some have commented that *Howting–Robinson* may have misapplied the language of Restatement § 187(2)(a). *See Morrison v. Unum Life Ins. Co. of Am.*, 730 F. Supp. 2d 699, 705 (E.D. Mich. 2010) (criticizing *Howting–Robinson* for lowering the § 187(1) standard from "no substantial relationship" to a comparative standard of "far less substantial relationship").

public policy preference for the enforcement of contractual choice-of-law provisions," and the plaintiff's delay in raising the argument); *Volunteer Energy Servs., Inc. v. Option Energy, LLC*, No. 1:11-CV-554, 2012 WL 3545283, at *9 (W.D. Mich. Aug. 16, 2012),[2] *aff'd sub nom. Volunteer Energy Servs., Inc. v. Option Energy, LLC*, 579 F. App'x 319 (6th Cir. 2014) ("The Court is satisfied that the Michigan SRCA does embody Michigan public policy, and that in light of the fact that the Agent Agreement was negotiated and made in Michigan and covered services that a Michigan sales representative was to perform exclusively in Michigan, failing to offer the protections of the SRCA would violate Michigan public policy.").

### 2. Application of Restatement Sections 187 and 188

Accordingly, the Court will evaluate whether Ontario or Michigan law should be applied to Plaintiff's SRCA claim based on the principles of §§ 187 and 188 of the Restatement (Second) of Conflict of Laws. In Michigan, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied," unless either (a) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties'

---

[2] Despite determining that failing to offer the protections of the SRCA would violate Michigan's public policy, *Volunteer Energy* determined that applying Ohio law would not be contrary to Michigan policy because Ohio had enacted a statute similar to Michigan's SRCA. 2012 WL 3545283, at *9.

choice," or (b) the application of the chosen state's law would be contrary to a fundamental policy of a state (i) with a materially greater interest than the chosen state in the determination of the issue and (ii) whose law would be applicable in the absence of an effective choice of law by the parties. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (1971); *Hudson v. Mathers*, 283 Mich. App. 91, 96–97, 770 N.W.2d 883 (2009).

In the present case, it is clear that the law contracted to under the Agreement—Ontario law—would apply under the "substantial relationship" prong of § 187(2)(a). The Agreement explicitly states that the parties have agreed that Ontario law applied to any disputes that arose under the agreement. Plaintiff already agreed that "Ontario clearly has a substantial connection to the parties and the transaction, as Defendant is an Ontario corporation with its principal place of business located in Ontario." Dkt. No. 9, p. 18 (Pg. ID No. 120). Since Ontario is where Defendant is located and where all orders are placed and accepted, there is more than a reasonable basis for the parties to have chosen Ontario law. *See* Dkt. No. 38, p. 17 (Pg. ID No. 612).

Consequently, if Michigan law is to apply to Plaintiff's SRCA claim, then the exception under § 187(2)(b) must apply. This requires both (1) that Michigan has a materially greater interest than Ontario in the determination of the issue; and (2) that the application of Ontario's law is contrary to a fundamental policy of

Michigan, whose law would otherwise apply under the rule of § 188. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (1971). Section 188 directs the Court to look at the following factors: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Id.* at § 188.

Here, Plaintiff's counsel noted at the hearing that the place of contracting is a neutral factor, because the contracting occurred over email in both Michigan and Ontario. *See also* Dkt. No. 38-5, pp. 2–4 (Pg. ID No. 637–39). The place of negotiation would also be neutral, as the parties were reported to have negotiated over email in Ontario and in Michigan.

Next, the Court looks to the place of performance[3] and the location of the subject matter of the contract. Although Plaintiff asserts it primarily called on automotive customers in Southeast Michigan, Dkt. No. 44, p. 19 (Pg. ID No. 687), the place of performance for Plaintiff's duties under the contract is the entirety of

---

[3] The Court will not place an undue focus on the place of performance, because such a dominate focus on this factor has been viewed skeptically under Michigan law when the parties previously agreed to a choice-of-law provision. *See Chrysler*, 448 Mich. at 127–28, 528 N.W.2d at 704 ("It is questionable whether Illinois has a greater interest in reaching into the contractual arrangements of out-of-state companies when those companies have negotiated an agreement in their own state concerning the relative liability obligations between them."); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 619 (6th Cir. 2014) (White, J., concurring in part) (noting that *Chrysler* presented "a strong indication that Michigan courts would honor the parties' choice of . . . law.").

-12-

North America, which would include Mexico, the United States, and Canada. Dkt. No. 38-2, p. 9 (Pg. ID No. 626). Defendant's alleged breach of its duties under the contract occurred in Ontario. Dkt. No. 38, pp. 17–18 (Pg. ID No. 612–13). Plaintiff served as a sales agent for all of North America, with a primary focus on Michigan, and all of the orders that gave rise to Plaintiff's commissions were required to be placed with and accepted by Defendant in Ontario. *Id*. Invoices and payments for the orders were received by Defendant in Ontario, and orders for customers were filled in Ontario. *Id*. Additionally, Defendant issued commission checks to Plaintiff from Ontario. *Id*.

Finally, the Court looks to the location of the parties. Plaintiff is a Michigan limited liability company with its principal place of business located in Brownstown, Michigan. Defendant is an Ontario, Canada corporation with its principal place of business located Pickering, Ontario. Thus, under the factors listed in § 188, it does not appear that Michigan would be the "state of the applicable law in the absence of an effective choice of law by the parties." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187(2)(b) (1971); *Ventra Grp.*, 191 F.3d at 741 (finding Ontario law governed under a § 188 analysis where the employer and its successors were Ontario corporations, the contract was negotiated and signed in Ontario, and the alleged breach occurred in Ontario, despite the plaintiff's residence and performance in Michigan).

-13-

With regard to Michigan's policy interest in this issue, the state has an interest in "ensur[ing] that sales representatives in Michigan are paid the full commissions to which they are entitled, especially when those commissions fall due after the termination of the employment relationship." *Howting-Robinson*, 65 F. Supp. 2d at 613. However, Michigan also has "a strong public policy preference for the enforcement of contractual choice-of-law provisions." *Trilogy Mktg.*, 2014 WL 4265788, at *8 (citing *Turcheck v. Amerifund Fin., Inc.*, 272 Mich. App. 341, 345, 725 N.W.2d 684, 688 (2006) ("It is undisputed that Michigan's public policy favors the enforcement of contractual forum-selection clauses and choice-of-law provisions.")).

As previously noted, the choice-of-law provision was individually negotiated between the parties. Plaintiff wrote, in an email about the provision: "The term of law is only an issues [sic] if a law suit [sic] is required and the person bring [sic] the suit. Based on previous track record this does not matter anyway." Dkt. No. 38-5, p. 4 (Pg. ID No. 639). After receiving modifications to the contract, including an increase in commission from 1% to 3%, Plaintiff stated "I can agree to this contract." *Id*. at 2. The Agreement was the result of bargaining between the parties, and it is noted that Plaintiff successfully negotiated multiple changes in the contract in its favor. The Court is hesitant to hold the choice-of-law provision inapplicable to Plaintiff's SRCA claim on public policy grounds, when it would

-14-

mean providing Plaintiff with more than he bargained for. *See Banek*, 6 F.3d at 361 n.2 ("We are hesitant to void the choice of law provision because that would mean Banek would be getting more than it bargained for."); *Trilogy Mktg*, 2014 WL 4265788, at *8 ("Plaintiff agreed to the selection of Massachusetts law at its own risk, and buyer's remorse does not give it the ability to argue otherwise.").

Based on the facts presented to the Court, it does not appear that Michigan has a materially greater interest than Ontario in the determination of this issue. Michigan's strong preference for enforcing contractual choice-of-law provisions, such as the one that was specifically negotiated here, must be balanced against Michigan's interest in ensuring its sales representatives are paid the full commission to which they are entitled. In balancing those two interests with regard to the present case, the Court finds that applying Ontario's law, which would otherwise apply under § 188, is the best way to "protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract." *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 comment e (1971).

A finding that Michigan does not have a materially greater interest than Ontario is in line with similar cases in the Eastern District of Michigan. For instance, in *Milne*, the court did not find that Michigan had a materially greater interest than Ontario, even though the plaintiff was a Michigan resident who

performed the majority of his work from his office in Michigan. 2010 WL 374176, at *6. The *Milne* court found that Ontario had the greater interest because the defendant was located in Ontario, made the decision to terminate the plaintiff in Ontario, all orders secured by the plaintiff were received and fulfilled in Ontario, and payment for orders were directed to the defendant in Ontario. *Id.* Additionally, the court considered that the plaintiff was not hired to solely do work within Michigan. *Id.*

Restatement commentary counsels that a forum should "not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 comment g (1971). Thus, although application of Ontario law abrogates a fundamental policy of Michigan law, that alone is not enough to override the parties' choice of law where Michigan's law would not otherwise apply under § 188 and Michigan does not have a materially greater interest than that of Ontario. *See id.* at § 187(b)(2).

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT** Defendant's Motion for Partial Summary Judgment [38]. Count III of Plaintiff's Amended Complaint is dismissed.

IT IS SO ORDERED.

-16-

Dated:      April 12, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge