UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WALLACE SALES & CONSULTING, LLC,

Plaintiff/Counter Defendant,

v.

TUOPU NORTH AMERICA, LIMITED,

Defendant/Counter Claimant.

_____/

Case No. 15-cv-10748

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO AMEND ITS COUNTER-COMPLAINT AND IMPLEAD JAMES WALLACE AS THIRD PARTY DEFENDANT [79]**

## I. INTRODUCTION

Wallace Sales & Consulting, LLC ("Plaintiff") filed a complaint against Tuopu North America, Limited ("Defendant") on March 2, 2015 alleging a breach of contract between the parties. Dkt. No. 1. Defendant filed a Counterclaim on August 7, 2015, Dkt. No. 21, and Plaintiff submitted its first amended complaint on August 28, 2015, Dkt. No. 28. On April 12, 2016, the Court granted partial summary judgment and dismissed Plaintiff's claim under the Michigan Sales Representatives Commission Act. Dkt. No. 50.

Presently before the Court is Defendant's Motion to Amend Its Counter-Complaint and Implead James Wallace as Third Party Defendant [79], filed on

-1-

August 26, 2016. Plaintiff filed a timely response on September 12, 2016,[1] Dkt. No. 85, to which Defendant replied on September 19, 2016, Dkt. No. 87.

For the reasons discussed herein, the Court will **DENY** Defendant's Motion to Amend Its Counterclaim [79].

## II. BACKGROUND

Plaintiff is a Michigan limited liability company, whose sole member is James Wallace ("Wallace"). Defendant is a Canadian corporation and a subsidiary of Ningbo Tuopu Group Co., Ltd., a Chinese manufacturing conglomerate. Defendant first retained Plaintiff as its sales representative pursuant to a written agreement in 2007.

In December 2011, the Plaintiff and Defendant decided to continue working together and executed a new written Manufacturer's Representative Agreement (hereinafter "the Agreement"), under which Plaintiff served as an independent

---

[1] Defendant states in a footnote on page 4 of its reply brief that "[i]ronically, Plaintiff criticizes Tuopu for delay in bringing this motion, despite filing its response three days after the 14 day deadline for responsive pleadings under LR 7.1(e)(2)." Dkt. No. 87, p. 4 (Pg. ID No. 1993). This footnote is indeed ironic, though not in the way that Defendant intended. Not only does Plaintiff appear to be in compliance with Rule 6(d) of the Federal Rules of Civil Procedure, but Defendant's use of a miniscule type size for this footnote is in violation of Local Rule 5.1(a)(3). *See* FED. R. CIV. P. 6(d) ("When a party may or must act within a specified time after service and service is made under Rule 5(b)(2)(C), (D), (E), or (F), 3 days are added after the period would otherwise expire under Rule 6(a)."); E.D. Mich. LR 5.1(a)(3) ("Except for standard preprinted forms that are in general use, type size of all text and footnotes must be no smaller than 10-1/2 characters per inch (non-proportional) or 14 point (proportional).").

manufacturer's representative. The Agreement's provisions governing the sales commissions that Defendant would be required to pay to Plaintiff in the event of termination varied based upon whether Plaintiff's termination was "without cause" or "for cause." Additionally, the Agreement specified that any disputes related to the Agreement may be brought in Ontario, Canada and shall be governed solely by Ontario, Canada law.

On July 11, 2014, Defendant sent Plaintiff notice of termination, without cause and for financial reasons, effective immediately. Dkt. No. 85-3, p. 2 (Pg. ID No. 1891). Plaintiff subsequently filed the present suit in March 2015. *See* Dkt. No. 1. A month after Plaintiff brought this lawsuit, Defendant converted its justification for terminating Plaintiff to being for cause and demanded repayment of commission in the amount of $225,031.06. Dkt. No. 85-4, p. 2 (Pg. ID No. 1893).

### III. LEGAL STANDARD

#### A.  Amending Pleadings

Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading should be freely given "when justice so requires." Nevertheless, there are certain situations in which it is appropriate to deny leave to amend, such as where there is undue delay in filing, a lack of notice and undue prejudice to the nonmoving party, bad faith by the moving party, or when the amendment would be

futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). There must be at least some significant showing of prejudice to the non-moving party for a court to deny a motion to amend. *Duggins v. Steak 'N Shake*, Inc., 195 F.3d 828, 834 (6th Cir. 1999). However, "[w]hen amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001). In the Sixth Circuit, allowing amendment after the close of discovery may create significant prejudice to the opposing party. *Duggins*, 195 F.3d at 834.

### B.  Counterclaims Arising After Earlier Pleadings

Federal Rule of Civil Procedure 13(e) provides that "[t]he court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading." "The standard applicable to amendments under Rule 15 is used to determine whether leave to file a counterclaim under Rule 13(e) should be permitted." *Hi-Lex Controls Inc. v. Blue Cross & Blue Shield of Michigan*, No. 11-12557, 2013 WL 228097, at *1 (E.D. Mich. Jan. 22, 2013) (citing *Kuschner v. Nationwide Credit, Inc.*, 256 F.R.D. 684, 689 (E.D. Cal. 2009)).

### C.  Impleading a Third-Party

Federal Rule of Civil Procedure 14(a)(1) governs when a defending party may bring in a third party. It provides that:

> A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

FED. R. CIV. P. 14(a)(1). Additionally, Rule 13 states "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." FED. R. CIV. P. 13(h) (providing the rules governing required joinder (Rule 19) and permissive joinder (Rule 20) of parties).

### IV. DISCUSSION

Defendant's motion seeks to amend its counterclaim to bring the following causes of action: (1) a claim for unjust enrichment against Plaintiff; (2) a claim for breach of contract against Plaintiff; (3) a claim for fraud against Plaintiff and Wallace; (4) a claim for the tort of deceit against Plaintiff and Wallace; (5) a claim to pierce the corporate shield against Wallace; (6) a claim to rescind the contract, presumably against Plaintiff; and (7) a declaratory judgment against Plaintiff and Wallace. *See* Dkt. No. 79-2, pp. 5–12 (Pg. ID No. 1599–1606).

Plaintiff argues in its response that leave to amend the counterclaim should be denied because of undue delay in requesting to amend and resulting substantial

prejudice. Dkt. No. 85, pp. 13–18 (Pg. ID No. 1857). Further, Plaintiff argues that any claims based on allegations of fraud are barred by Michigan and Ontario's statutes of limitations. *Id.* at 18–25. Finally, Plaintiff contends that it would be futile to allow Defendant to amend its counterclaim, as none of the seven counts sets forth a claim upon which relief can be granted. *Id.* at 25–30.

### A. Undue Delay

Defendant argues that it "only recently" learned of Wallace's fraud, blaming Plaintiff for failing to provide relevant discovery documents earlier. Dkt. No. 79, p. 13 (Pg. ID No. 1585). Such an argument stretches the definition of "recent," when viewed in light of the evidence presented to the Court.

The evidence shows that in October 2005, Wallace sent a résumé bearing false information about his educational attainment to employees at Topew International. Dkt. No. 79-3, pp. 2–4 (Pg. ID No. 1609–11). The email was not sent to Defendant, Tuopu North America Limited, because Defendant was not incorporated until January 1, 2006, and accordingly did not exist in October 2005. Dkt. No. 85-7, pp. 2–3 (Pg. ID No. 1899–1900). Topew International has since voluntarily dissolved. Dkt. No. 85-8, p. 2 (Pg. ID No. 1902). It appears that Topew International and Tuopu North America are different companies. Dkt. No. 85-13, p. 3 (Pg. ID No. 1943).

Defendant and Plaintiff first contracted in February 2007, almost a year and a half after the 2005 email was exchanged. Dkt. No. 85-15. The contract appointed Plaintiff as the sales agent for Defendant, responsible for promoting and selling Defendant's products. *Id.* at 2–3 (Pg. ID No. 1980–81). When that contract expired, the parties decided to enter into a subsequent contract, effective January 1, 2012, from which the contract claims in this case arise. Dkt. No. 85-2.

On December 23, 2015, Wallace testified at his deposition that he did not complete his mechanical engineering degree after attending night school for six years at Lawrence Technological University. Dkt. No. 85-5, p. 2 (Pg. ID No. 1895). At his deposition on July 14, 2016, Sigismondo ("Dino") Zonni testified that Wallace led him to believe that he was an engineer when he was hired, but never provided him anything in writing to Zonni that said he was an engineer. Dkt. No. 79-4, pp. 2–3 (Pg. ID No. 1613–14). Defendant has since recovered a copy of the 2005 email and the résumé sent to Topew International.[2] Dkt. No. 79-3.

---

[2] Defendant also presents a screenshot of Wallace's LinkedIn profile, stating that he has a Bachelor of Science degree in Mechanical Engineering from Lawrence Technological University with a date stamp of September 17, 2015. Dkt. No. 79-5, p. 2 (Pg. ID No. 1615). This evidence, dated a year before the proposed motion to amend, does not support Defendant's theory that it needed eight months after Wallace's deposition admission to gather evidence supporting new claims.

Defendant has three listed directors—Bin Wang, Jianshu Wu, and Dino Zonni[3]—all of whom were included on or immediately forwarded the October 2005 email to Topew International containing Wallace's résumé. Dkt. No. 85-7, p. 2 (Pg. ID No. 1899); Dkt. No. 79-3, pp. 2–4 (Pg. ID No. 1609–11). It is unclear why Defendant needed Plaintiff to produce a document that its three directors have possessed for nearly eleven years. Furthermore, it is far from clear that Plaintiff would have been required to produce this email pursuant to a request for emails between Wallace and Tuopu, *see* Dkt. No. 79, p 14 (Pg. ID No. 1586), when the email was sent to Topew International, not Tuopu North America.

There is evidence that Defendant waited eight months between finding out that Wallace did not earn an engineering degree on December 23, 2015, and bringing this motion on August 26, 2016. At the time of Wallace's December 2015 deposition, the discovery cutoff was March 31, 2016. Dkt. No. 32. Discovery has been extended four times and the latest extension provided that discovery ended on September 30, 2016, the same date as the dispositive motion cutoff. Dkt. No. 73. Defendant filed the present motion slightly more than a month before the discovery period was to expire, meaning that a full briefing schedule and hearing could not be completed before the discovery and dispositive motion cutoff.

---

[3] It appears that Dino Zonni began working as a director at Topew International on November 28, 2005, prior to the corporation's dissolution, but did not work there at the time Wallace sent the October 2005 email. Dkt. No. 85-8, p. 3 (Pg. ID No. 1903).

Defendant states it did not begin its investigation into the 2005 email correspondence until mid-July 2016, more than six months after it had notice that Wallace did not have an engineering degree. Dkt. No. 79, p. 14 (Pg. ID No. 1586). Given that Wallace sent and all three of Defendant's directors received the email in question eleven years ago, and the six month gap between Wallace's admission and Defendant's investigation into the issue, the Court finds that Defendant has failed to show justification for failing to seek amendment before this late stage in the litigation.

## B. Substantial Prejudice to Opposing Party

In assessing prejudice to the opponent of a motion to amend pleadings, the Court looks to the stage in the proceedings when amendment was sought; whether amendment could significantly delay the dispute's resolution; and whether amendment would require the opponent to expend significant additional resources to conduct further discovery and trial preparation. *See Miller v. Admin. Office of Courts*, 448 F.3d 887, 898 (6th Cir. 2006) ("Because the discovery deadline had already passed and the deadline for filing dispositive motions on the issue of immunity was imminent, the defendants would have been prejudiced if a further amendment had been permitted by the district court."); *Phelps v. McClellan*, 30 F.3d 658, 662–63 (6th Cir. 1994) ("In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require

the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction.").

### 1. Stage of Proceedings

As mentioned above, due to the timing of this motion's filing, discovery and the dispositive motion deadline have both passed before the Court was able to make a determination on whether Defendant may amend its counterclaims. Even though the Court extended the parties' discovery period an additional six months from its original deadline, Defendant chose to file this motion a mere 35 days before discovery and dispositive motion cutoff—despite having eight months of notice. The case was filed more than 18 months ago and is set to go to trial in two and a half months. *See* Dkt. No. 73, p. 2 ("**IT IS FURTHER ORDERED** that the **discovery deadline is hereby extended through September 30, 2016**, with the parties recognizing that this adjournment **will not** extend the December 13, 2016 trial date."). Motions in Limine and the Final Pretrial Order are due in less than fifty days. *See* Dkt. No. 61.

The Court holds that allowing Defendant to amend at this late stage in the proceedings to add six new counterclaims and a new counter-defendant, after the discovery and dispositive motion deadlines have passed, would significantly prejudice Plaintiff and Wallace. *See Duggins*, 195 F.3d at 834 ("At least one Sixth

Circuit decision has held that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree.").

### 2.  *Need for Additional Discovery*

Despite knowing that Wallace had lied about having an engineering degree since December 2015, Defendant remained silent about its fraud claims during the eight months of discovery and depositions that followed. There does not appear to be any notice, prior to late July 2016, that Defendant intended to bring new counterclaims against Plaintiff and Wallace for fraud. Accordingly, the discovery between the parties related to the claims each party asserted: Plaintiff's breach of contract claim for commissions following his termination and Defendant's unjust enrichment counterclaim for commissions provided after Plaintiff's termination. Thus, it stands to reason that additional and potentially duplicative discovery will be needed if Defendant adds six new counterclaims all premised on fraud, some against a new party to the case.

Defendant cites to *Janikowski v. Bendix Corp.*, 823 F.2d 945, 952 (6th Cir. 1987) for the principle that even if a timely brought amended claim requires additional or duplicative discovery, that is not sufficient to establish prejudice. *Janikowski* differs in several aspects from the present dispute.

First, in *Janikowski*, discovery had not yet been completed because the parties had agreed to hold discovery in abeyance until the court disposed of the

defendant's motion for summary judgment. 823 F.2d at 951. Here, there was no such agreement between the parties and the discovery and dispositive motion deadlines passed a month after Defendant filed the motion to amend. The original deadline, in place when Defendant first learned about the alleged fraud in December 2015, was March 31, 2016. After a seemingly endless series of discovery motions from both parties, this deadline was prolonged an additional six months over four separate extensions, with the latest extensions specifying there would be no delay to the December 2016 trial date.

Second, the plaintiff in *Janikowski* sought only to add a single claim for breach of contract less than a year after filing his original complaint. 823 F.2d at 951. Here, Defendant seeks to add six new counterclaims and one new counter-defendant eighteen months after the complaint was filed. Further, Defendant allowed eight months of discovery to proceed between learning of potential new claims and seeking to amend. The discovery period in the present case would have expired in March 2016, had it not been extended four times to deal with the parties' discovery disputes.

Third, the defendant in *Janikowski* argued that its only claim of prejudice was the cost of conducting an additional round of discovery into the single breach of contract claim, and the plaintiff acknowledged he could be held responsible for the cost of duplicative discovery. *Id*. at 951–52. Here, because the original

counterclaim did not put any parties on notice of six potential fraud claims, entirely new discovery would need to be conducted, including several more depositions of individuals living overseas. *See Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (affirming denial of a motion to amend where significant discovery had already been completed and the dispositive motion deadline passed while the motion was pending). Defendant has not shown any acknowledgement of a responsibility to pay for this additional discovery.

In sum, the conclusion that significant additional and duplicative discovery would have to be conducted is one of the multiple factors supporting a denial of the motion to amend the counterclaim.

### 3. *Further Delay of the Proceedings*

Defendant alleges that amending its counterclaims would not significantly delay discovery. Dkt. No. 87, p. 5 (Pg. ID No. 1994). The Court disagrees. There is an extensive record of discovery disputes between the parties and numerous extensions sought based on Plaintiff's claim for breach of contract and Defendant's counterclaim of unjust enrichment. *See* Dkt. No. 45 (extending scheduling order dates an additional sixty days); Dkt. No. 48 (seeking to compel discovery from Defendant); Dkt. No. 51 (seeking to compel answers to interrogatories from Plaintiff); Dkt. No. 55 (seeking to quash a subpoena issued by Defendant); Dkt. No. 57 (extending discovery deadline an additional two months and specifying that

no further adjournments will be granted); Dkt. No. 61 (extending discovery one more month); Dkt. No. 62 (seeking to quash a subpoena issued by Plaintiff); Dkt. No. 63 (seeking to quash a subpoena issued by Plaintiff); Dkt. No. 67 (seeking a forensic examination of Plaintiff's computers and email accounts); Dkt. No. 69 (seeking an emergency stay of depositions and to quash a subpoena issued by Defendant); Dkt. No. 71 (seeking a protective order quashing subpoena issued by Defendant); Dkt. No. 73 (addressing discovery motions and extending the discovery deadline without extending the trial date); Dkt. No. 81 (seeking to compel answers to an interrogatory from Defendant); Dkt. No. 83 (seeking to hold Plaintiff in contempt of court). Based on this record, there is every indication that numerous more discovery disputes will ensue should Defendant be allowed to add numerous other counterclaims at the eleventh hour.

Accordingly, Plaintiff has shown that it would suffer substantial prejudice if Defendant is allowed to amend at this late stage in the proceedings, because substantial new and duplicative discovery would be required, which would result in significant further delay.

### C. Futility of Amendment

The final factor to be considered upon a motion to amend pleadings is whether the proposed amendments would be futile. *Wade*, 259 F.3d at 458.

Plaintiff contends that Defendant's proposed amendment is futile because it is barred by the statute of limitations. Dkt. No. 85, p. 18 (Pg. ID No. 1862).

"A federal court whose jurisdiction is based upon diversity of citizenship must apply the choice of law rules of the forum state." *Johnson v. Ventra Grp.*, *Inc.*, 191 F.3d 732, 745 (6th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 490 (1941)). In the present case, the forum state is Michigan. "Under Michigan's common law choice of law rule, statutes of limitation are considered procedural and are governed by the law of the forum." *Id. See also Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir. 1998) ("Absent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach, while the law chosen by the parties governs the terms of their contract."). Accordingly, Michigan's statute of limitations will apply to the claims presented. *See Johnson*, 191 F.3d at 745–46 (applying Ontario law to the substance of the case and Michigan's statute of limitations).

The Court will now proceed to evaluate Defendant's six proposed new counterclaims, in light of their applicable statutes of limitations and pleading requirements.

### 1. Breach of Contract Claim Against Plaintiff

Defendant seeks to bring a breach of contract claim against Plaintiff, arguing that "Plaintiff breached its duty of good faith and fair dealing, as the Agreement was premised on fraud." Dkt. No. 79-2, pp. 6–7 (Pg. ID No. 1600–01). Defendant alleges that "an underlying assumption" of the Agreement was that Wallace had an engineering degree, and the lack of that degree caused Plaintiff to fail to perform duties and conditions of the Agreement, as they related to engineering duties. *See id.* at 7.

Defendant's breach of contract claim fails for several reasons. First, the statute of limitations in Michigan for breach of contract claims is six years. MICH. COMP. LAWS § 600.5807(8). A breach of contract claim accrues "at the time the wrong upon which the claim is based was done regardless of the time when the damage results." MICH. COMP. LAWS § 600.5827. Plaintiff allegedly breached its duty of good faith and fair dealing by providing a résumé with false educational information to Topew International in October 2005. Defendant allegedly relied on this information when it contracted with Plaintiff in 2007. When that contract expired, the parties chose to continue their relationship in a subsequent contract in the 2012 ("the Agreement"). At the time of the 2012 contract renewal, the parties had the benefit of experience working with each other for several years, and did not need to rely solely on a résumé submitted to another company seven years

earlier. Accordingly, "the wrong upon which the claim is based" could be Wallace's 2005 email of his résumé to Topew, upon which Defendant based its assumption that Wallace had an engineering degree. The wrong could also be considered to be the initial agreement between the parties in 2007, which could have been made in reliance on the résumé submitted to Topew in 2005. Since more than six years have passed since the email and since the date of the original contract, this claim is accordingly time-barred.

Additionally, contracts themselves do not support Defendant's new assertion that Wallace was hired as an "engineering project manager." Dkt. No. 79-2, p. 7 (Pg. ID No. 1601). The contracts in question both state that Plaintiff's role was as a "manufacturer's representative" or "sales agent." *See* Dkt. No. 85-2; Dkt. No. 85-15. Neither contract mentions the words "engineer" or "engineering" a single time, or specifies that Plaintiff's role was conditional on having an engineering degree. *See id*. Furthermore, neither contract provides that Plaintiff was responsible for any duties similar to engineering of products. *See id*. The contracts instead narrowly define Plaintiff's duties as using his "best efforts to solicit and promote sale of [Defendant's] products," "maintain[ing] appropriate sales contact with the Customers," "advis[ing] [Defendant] as to relevant developments and activities," "attend[ing] meetings," and "provid[ing] a summary breakdown of each proposed quote" to Defendant. Dkt. No. 85-2, p. 3 (Pg. ID No. 1880).

Furthermore, the Agreement included a clause stating: "This Agreement constitutes the entire agreement of the parties hereto with respect to the subject matter hereof and all prior and contemporaneous agreements between the parties, whether written or oral, are merged herein and shall be of no force or effect." Dkt. No. 85-2, p. 8 (Pg. ID No. 1885). Even if the parties had "entered into an agreement in 2007 under which Wallace was to provide engineering, program management and sales services," Dkt. No. 79, p. 9 (Pg. ID No. 1581), such an agreement would have been rendered void if not included in the 2012 Agreement.

Accordingly, the Court finds that it is proper to deny Defendant's request to add a new breach of contract counterclaim because such a claim would be futile.

### 2. *Fraud Claim Against Plaintiff and Wallace*

Defendant's next proposed counterclaim alleges that Plaintiff and Wallace are liable for fraud because Wallace emailed the résumé claiming he had an engineering degree to Topew International in 2005, and in 2007 Defendant retained Plaintiff "to provide engineering and project management services."[4] Dkt. No. 79-2, pp. 8–9 (Pg. ID No. 1602–03).

---

[4] Defendant provided no support for its new argument Plaintiff's position in sales was actually a position to provide engineering and project management services. The lone piece of evidence offered in support is an unsigned, unsworn, and undated "affidavit" from Dino Zonni. Dkt. No. 79-6, p. 2–5 (Pg. ID No. 1618–21). A district court may properly reject unsigned, unsworn affidavits. *Sfakianos v. Shelby Cnty. Gov't*, 481 Fed. App'x. 244, 245 (6th Cir. 2012). Zonni's previous

-18-

Fraud claims in Michigan are subject to a six-year statute of limitations. MICH. COMP. LAWS § 600.5813. Like a breach of contract claim, "the claim accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." MICH. COMP. LAWS § 600.5827. Thus, Defendant's claim for fraud accrued when wrong was done, not when it was discovered. *See Boyle v. Gen. Motors Corp.*, 468 Mich. 226, 661 N.W.2d 557 (2003). Additionally, Michigan courts have assumed that fraud will be quickly discovered when an employee lies on a résumé about a core qualification for the position. *See Smith v. Charter Twp. of Union*, 227 Mich. App. 358, 365, 575 N.W.2d 290, 293–94 (1998).

Again, this proposed claim is brought eleven years after Wallace emailed his fictitious résumé to Topew International, and nine years after the parties first contracted in alleged reliance on that résumé. Defendant's proposed fraud claim is time-barred and therefore amendment to add the claim should be denied for futility.

---

signed affidavit, submitted with Defendant's Motion for Partial Summary Judgment, characterizes Plaintiff's position as a "manufacturer's representative," responsible for serving as a liaison between Tuopu and its customers. Dkt. No. 38-3, p. 2 (Pg. ID No. 631). The affidavit never includes any mention or inference that Wallace was considered one of the engineering employees or performed any engineering duties. The affidavit similarly lacks any explicit or implicit reference to any project management duties for which Wallace was responsible.

### 3.  Tort of Deceit Claim Against Plaintiff and Wallace

Defendant's proposed "tort of deceit" counterclaim essentially repeats the same allegations as its proposed fraud counterclaim. *See* Dkt. No. 79-2, p. 9 (Pg. ID No. 1603). Under Ontario law, a tort of deceit claim appears to be the same as a tort of civil fraud claim. *See Bruno Appliance and Furniture, Inc. v. Hryniak*, [2014] 1 S.C.R. 126. Accordingly, the Court's above analysis on Defendant's proposed fraud counterclaim applies similarly to Defendant's proposed tort of deceit counterclaim. Thus, this proposed amendment is also denied due to futility.

### 4.  Pierce the Corporate Veil Claim Against Wallace

Defendant next seeks to amend its counterclaim to set aside the corporate shield and hold Wallace personally liable for Plaintiff's conduct because he is Plaintiff's sole member. Dkt. No. 79-2, pp. 9–10 (Pg. ID No. 1603–04). Plaintiff argues that this counterclaim is futile because it fails to identify the elements for a corporate piercing claim under either Ontario law or Michigan law, and fails to set forth any factual allegations supporting a corporate piercing claim. Dkt. No. 85, p. 29 (Pg. ID No. 1873).

Under Ontario law, piercing the corporate veil "is to disregard the separate legal personality of a corporation, a fundamental principle of corporate law" only imposed in exceptional cases where it would be "flagrantly" unjust to treat the corporation as a separate legal person. *See 642947 Ontario Ltd. v. Fleischer*, 2001

CanLII 8623, ¶ 67 (ON CA). "Typically, the corporate veil is pierced when the company is incorporated for an illegal, fraudulent or improper purpose." *Id*. at ¶ 68. *See also Transamerica Life Insurance Co. of Canada v. Canada Life Assurance Co*. (1996), 28 O.R. (3d) 423 at pp. 433–34 (Gen. Div.) ("[T]he courts will disregard the separate legal personality of a corporate entity where it is completely dominated and controlled and being used as a shield for fraudulent or improper conduct."). The corporate shield is not lightly set aside under Ontario law. *See 642947 Ontario Ltd*, 2001 CanLII 8623, ¶ 69 (affirming a trial court's decision to pierce the corporate veil when the corporation had no assets to honor its undertaking and the members knew that the corporation had no assets, making it a mere "shell company").

In the present case, Defendant's proposed counterclaim briefly alleges that Plaintiff has one member—Wallace—and the "fraudulent and wrongful actions of James Wallace and damages therefrom warrant the setting aside of the corporate shield" and a finding that Wallace is individually liable. Dkt. No. 79-2, p. 10 (Pg. ID No. 1604). Such a claim, viewed in conjunction with the allegations contained in the proposed counterclaim as a whole, are insufficient to state a claim under Ontario law. Defendant has not alleged that Plaintiff was incorporated for "an illegal, fraudulent or improper purpose." *See 642947 Ontario*, 2001 CanLII 8623, ¶ 67. Defendant's allegations that Wallace, on behalf of Plaintiff, submitted a

fraudulent résumé to Topew International in 2005, and that Defendant relied on that résumé when it hired Plaintiff in 2007, do not present Plaintiff as a mere sham or shell corporation being used as a shield for improper conduct.

Thus, the Court finds that Defendant's proposed counterclaim to pierce the corporate veil fails to set forth a claim upon relief can be granted, and is denied for futility.

### 5.  *Rescission of Contract Claim*

Defendant also proposed to rescind the 2012 Agreement based on fraudulent representations that Plaintiff made to Topew International in the 2005 email. Dkt. No. 79-2, pp. 10–11 (Pg. ID No. 1604–05). Defendant's proposed equitable remedy of rescission is also governed by the same six-year statute of limitations as applies to Defendant's proposed fraud claim. *See* MICH. COMP. LAWS § 600.5813; *Adams v. Adams*, 276 Mich. App. 704, 710, 742 N.W.2d 399, 403 (2007). Accordingly, as the Court already found Defendant's proposed fraud claim was time-barred, this proposed remedy is also denied for futility.

### 6.  *Declaratory Judgment Against Plaintiff and Wallace*

In its final proposed counterclaim, Defendant seeks a declaratory judgment against Plaintiff and Wallace, stating that the 2012 Agreement was void from the beginning, that Defendant is entitled to repayment of all payments to Plaintiff

during their relationship. Dkt. No. 79-2, pp. 11–12 (Pg. ID No. 1605–06). Alternatively, Defendant seeks a declaratory judgment that the 2012 Agreement was terminated for cause no later than July 11, 2014. *Id.* at 12. Both requests are premised on the alleged fraud Plaintiff and Wallace committed in emailing a résumé with incorrect educational information to Topew International in 2005, prior to the beginning of Defendant and Plaintiff's working relationship in 2007. *See id.*

All of Defendant's other proposed counterclaims have been denied for failure to state a claim or for being barred by the applicable statute of limitations. Similarly, the Court will deny Defendant's proposed counterclaim for a declaratory judgment, as it appears to be premised on this breach of contract and fraud claims that the Court has denied.

## V. CONCLUSION

The Court has found that Defendant has not provided a sufficient justification for the delay in requesting the amendment; that Plaintiff will be substantially prejudiced in having to perform additional and duplicative discovery, which will further delay the proceedings; and that the proposed amendments are futile. The Court hereby DENIES Defendant's Motion to Amend Its Counter-Complaint and Implead James Wallace as Third Party Defendant [79].

IT IS SO ORDERED.

Dated:        October 3, 2016

                                                      /s/Gershwin A Drain
                                                      HON. GERSHWIN A. DRAIN
                                                      United States District Court Judge