UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

W<small>ALLACE</small> S<small>ALES</small> & C<small>ONSULTING</small>, LLC,

    Plaintiff/Counter Defendant,

    v.

T<small>UOPU</small> N<small>ORTH</small> A<small>MERICA</small>, L<small>IMITED</small>,

    Defendant/Counter Claimant.
_____/

Case No. 15-cv-10748

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
D<small>AVID</small> R. G<small>RAND</small>

**O<small>PINION AND</small> O<small>RDER</small> D<small>ENYING</small> D<small>EFENDANT'S</small> M<small>OTION FOR</small> S<small>UMMARY</small>
J<small>UDGMENT</small> [94]**

**I. I<small>NTRODUCTION</small>**

On March 2, 2015, Wallace Sales & Consulting, LLC ("Plaintiff") filed a Complaint and Demand for Trial by Jury against Tuopu North America, Limited ("Defendant"), alleging breach of contract and seeking a declaratory judgment. *See* Dkt. No. 1. On August 7, 2015, Defendant asserted a counterclaim against Plaintiff for Unjust Enrichment/Quantum Meruit. Dkt. No. 21, pp. 3–4 (Pg. ID No. 506–07). Plaintiff amended its complaint on August 28, 2015. Dkt. No. 28.

Presently before the Court is Defendant's Motion for Summary Judgment, filed on September 30, 2016. Dkt. No. 94. Upon review of the briefing, the Court concludes that oral argument will not aid in the resolution of the instant motion.

Accordingly, the Court will resolve Defendant's present motion on the briefs. *See* E.D. Mich. LR 7.1(f)(2).

For the reasons discussed herein, the Court will **DENY** Defendant's Motion for Summary Judgment [94].

## II. BACKGROUND

Plaintiff is a Michigan sales representative firm in the automotive industry, whose sole member is James Wallace ("Wallace"). Dkt. No. 105, p. 6 (Pg. ID No. 2733). Defendant is an Ontario, Canada corporation and a subsidiary of a Chinese manufacturing conglomerate, and functions as the North American supplier of automotive suspension parts. *Id.*

In October 2005, Wallace emailed with James Robbescheuten at Topew International Incorporated. *Id.* at 8. In response to Robbescheuten's request, Wallace attached a résumé that stated he had an Associate's Degree in Engineering Technology from Henry Ford Community College and a Bachelor's of Science degree in Mechanical Engineering from Lawrence Technological University. *Id.*; Dkt. No. 105-2, p. 4 (Pg. ID No. 2764).

Defendant, Tuopu North America, was incorporated on January 24, 2006. Dkt. No. 105-4. Defendant first retained Plaintiff as its sales representative pursuant to a written agreement in February 2007. Dkt. No. 105-6. The 2007 agreement appointed Plaintiff to be Defendant's "sales agent for the sale and

servicing of Products to the Customers" and to "assist in representing [Defendant] to other customers." *Id*. at 2 (Pg. ID No. 2279).

In December 2011, after several years of working together, Plaintiff and Defendant agreed to execute a new written Manufacturer's Representative Agreement (hereinafter "the Agreement"), under which Plaintiff served as an independent manufacturer's representative. Dkt. No. 105-9. The Agreement became effective on January 1, 2012. *Id*. at 2 (Pg. ID No. 2802). According to the Agreement, any disputes related to the Agreement shall be governed solely by Ontario, Canada law. *Id*. at 8.

The Agreement included detailed provisions governing the sales commissions that Defendant would be required to pay to Plaintiff in the event of termination, which varied based upon whether Plaintiff's termination was "without cause" or "for cause." *Id*. at 6–7. If Defendant terminated Plaintiff "without cause," it was required to continue paying sales commissions to Plaintiff on all sales for which an order or quotation was received prior to December 31, 2014. *Id*. at 7. However, if Defendant terminated Plaintiff "for cause," it was only required to pay Plaintiff commissions on parts shipped during the one-month period following the effective termination date. *Id*.

The parties' allegations diverge as to the quality of Plaintiff's work for Defendant. Plaintiff asserts that by 2014, the orders it procured were resulting in

sales of around $40 million per year. Dkt. No. 105, p. 6 (Pg. ID No. 2733). Conversely, Defendant alleges that the parties' working relationship was problematic, due to Plaintiff's failure to work well with Defendant's staff. Dkt. No. 94, pp. 16–17 (Pg. ID No. 2232–33).

On July 11, 2014, Defendant sent Plaintiff notice of termination, effective immediately. Dkt. No. 105-12. The termination notice stated that the "termination is due to financial reasons and is without cause." *Id*. Additionally, the letter provided that Defendant would pay Plaintiff sales commissions through December 31, 2014. *Id*.

On March 2, 2015, Plaintiff filed this suit, alleging breach of contract to pay sales commissions and seeking a declaratory judgment. Dkt. No. 1. In April 2015, shortly after the present case was filed, Defendant sent Plaintiff a letter rescinding the termination without cause and replacing it with a termination for cause. Dkt. No. 105-14. Defendant then filed a counterclaim against Plaintiff, seeking reimbursement for commissions paid after termination. Dkt. No. 21.

In Wallace's December 2015 deposition, he stated that he did not have a bachelor's degree from Lawrence Technological University because he had never finished the program. Dkt. No. 105-8, p. 3 (Pg. ID No. 2797). In August 2016, Defendant sought leave to amend its counterclaim to add six new claims premised on Plaintiff's résumé fraud. Dkt. No. 79. Defendant also sent a new notice of

termination for cause to Plaintiff on August 5, 2016, alleging that Plaintiff's claim of having earned a bachelor's degree in engineering constituted fraudulent misrepresentation, which voided the parties' contract. Dkt. No. 94-15.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

**A. After-Acquired Evidence Doctrine**

Defendant first argues that the after-acquired evidence doctrine bars Plaintiff's claims and requires that the agreement be terminated for cause, relying on case law about employer-employee relationships.[1] Dkt. No. 94, p. 23 (Pg. ID No. 2239). The Supreme Court of Canada in *Lake Ontario Portland Cement Co. v. Groner*, [1961] S.C.R. 553 (S.C.C.), quoted from Halsbury's Laws of England in describing after-acquired cause for termination:

> It is not necessary that the master, dismissing a servant for good cause, should state the ground for such dismissal; and, provided good ground existed in fact, it is immaterial whether or not it was known to the employer at the time of the dismissal. Justification of dismissal can accordingly be shown by proof of facts ascertained subsequently to the dismissal, or on grounds differing from those alleged at the time.

*Id*. at 563–64.

As Plaintiff noted in its response, this case does not involve the wrongful termination of an employer-employee relationship, but rather a breach of contract

---

[1] The Court encountered challenges in reviewing the Canadian case law cited by Defendant. The vast majority of Defendant's Canadian citations did not include pin cites, even for quotations. Many of the cases were attached at different exhibit numbers than those cited to in the motion's brief. *See* Dkt. No. 94, pp. 23–33 (Pg. ID No. 2239–49). Additionally, for several cases cited, Defendant failed to attach the correct case. For one case cited, *McIntyre v. Hockin* [1889], 16 Ont. App. Rep. 498, Defendant attached an error message that the case was unavailable, rather than attach the case itself. Dkt. No. 95-9, p. 2 (Pg. ID No. 2461). For another case, Defendant attached an older reversed opinion, rather than the opinion actually cited in Defendant's brief. Dkt. No. 95-4, p. 2 (Pg. ID No. 2350). Finally, several of the cases cited and attached were not Ontario or Canadian Supreme Court cases. *See* Dkt. No. 95-4, 95-13, 95-14, 95-15. Accordingly, the Court was not able to review and utilize all of the Canadian cases cited by Defendant in its motion.

claim between two business entities. Dkt. No. 105, p. 20 (Pg. ID No. 2747). In reply, Defendant cites to several Canadian cases, including one Ontario case, where an after-acquired cause for termination can apply to contracts between corporate bodies. Dkt. No. 114, p. 2 (Pg. ID No. 3023).

In *Sandid Enterprises Ltd. v. Komtech Inc.*, [2010] ONSC 4779, the Ontario Superior Court of Justice noted that "[e]ven though an employer can rely on an after-acquired cause as justification for dismissal, the after-acquired cause must be sufficiently serious to warrant dismissal." *Id.* at ¶ 139. Weighing the evidence, the *Sandid* court then found that the after-acquired cause for dismissal—disclosing a customer list to another employer—was not sufficiently serious to justify a dismissal. *Id*. at ¶ 148.

In the present case, there is a dispute of material fact as to whether a bachelor's degree in engineering was required for Plaintiff's position as a sales representative for Defendant. Defendant submitted a belated affidavit of Dino Zonni, dated and sworn on November 3, 2016, over a month after the Motion for Summary Judgment was filed. Dkt. No. 115-1, pp. 2–5 (Pg. ID No. 3101–04). In that affidavit, Zonni states that Plaintiff's position was that of a "sales engineer" and required a Bachelor's of Science degree in Mechanical Engineering. *Id*. at 4. Conversely, Plaintiff asserts neither the 2007 Agreement nor the 2012 Agreement required an engineering degree, and that neither agreement imposed any

engineering duties. Dkt. No. 105-6; Dkt. No. 105-9. Additionally, Wallace testified that his duties for Defendant were those of a sales representative, rather than an engineer:

> Q. Tell me what you did for Tuopu.
>
> A. I would visit the customer. I would meet with purchasing and engineering once or twice a week, find out what was new, what opportunities might be coming their way. I would supply quotations to purchasing. I would participate in tech reviews with purchasing and engineering. And I would attend customer meetings with both purchasing and engineering.

Dkt. No. 105-8, p. 4 (Pg. ID No. 2798). Wallace also stated that he did not have responsibility for engineering decisions during his work with Defendant:

> Q. Did you have any role yourself in any of the designs or design changes?
>
> A. When you say "role," did I make suggestions on certain—
>
> Q. Yes.
>
> A. I would make suggestions, but it was only up to the engineers to decide what to do.
>
> Q. So it was not your role to tell the engineers what to do, correct?
>
> A. Correct.

Dkt. No. 105-8, p. 6 (Pg. ID No. 2800).

Based on the facts presented, the Court is unable to determine whether Plaintiff's submission of a résumé bearing false educational credentials to Topew International in 2005 was sufficiently serious to warrant Defendant's termination

of the 2012 Agreement with cause in 2014. Thus, the Court will not grant Defendant summary judgment in reliance on the after-acquired evidence doctrine.

### B. Fraudulent Procurement of the Contract

Defendant next asks the Court to void the parties' contract as a result of fraud committed by Plaintiff and Wallace, stating that the 2012 Agreement was void ab initio. Dkt. No. 94, pp. 29–33 (Pg. ID 2245–49). In *Clark v. Coopers & Lybrand Consulting Group*, [1999] O.J. No. 4284, the Ontario Supreme Court of Justice noted some of the principles of contract law regarding fraudulent misrepresentation:

> Lord Atkinson made it clear that to establish a case of false or fraudulent misrepresentation the following had to be established: (1) that the representations complained of were made by the wrongdoer to the victim; (2) that these representations were false in fact, (3) that the wrongdoer, when he made them either knew that they were false or made them recklessly without knowing whether they were false or true; (4) that the victim was thereby induced to enter into the contract in question.

*Id*. at ¶¶ 36–37. The *Clark* court went on to note that:

> A fraudulent misrepresentation amounts to the tort of deceit, for which the injured party will receive damages from the misrepresentor. A contract induced by fraud is voidable at the election of the defrauded party. *It is not void ab initio*, it is liable to be upset. Rescission may be granted. But the equitable remedy of rescission is discretionary.

*Id.* at ¶ 48 (emphasis added). To void the contract, "[t]he misrepresentation must be 'material,' 'substantial,' or 'go to the root of' the contract." *Guarantee Co. of North America v. Gordon Capital Corp.*, [1999] 3 S.C.R. 423, ¶ 47.

There are several reasons why Defendant has not established all the elements of fraudulent misrepresentation at the summary judgment stage. First, there is a dispute that Plaintiff submitted the résumé bearing false educational credentials to Defendant, with the intention that Defendant would act in reliance upon that misrepresentation. Defendant has produced evidence that Defendant sent the false résumé to individuals at Topew International in 2005, the year prior to Defendant's incorporation, but has not presented evidence that Plaintiff submitted the résumé in question to Defendant itself. Defendant has similarly not provided evidence that Defendant relied on the false information in Wallace's LinkedIn profile in entering into the contract with Plaintiff. Thus, Defendant has not yet satisfied the first prong of fraudulent misrepresentation: "that the representations complained of were made by the wrongdoer *to the victim*." *See Clark*, [1999] O.J. No. 4284, at ¶ 36.

Next, there is also a dispute of fact as to whether the misrepresentation of Wallace's educational attainment was material, substantial, or went to the root of the contract. While Defendant relies on Dino Zonni's affidavit that a bachelor's degree in engineering was required for the position, Dkt. No. 115-1, p. 4 (Pg. ID No. 3103), Plaintiff—the non-moving party—disputes this fact. Plaintiff points to

the absence of any language in the 2007 Agreement and 2012 Agreement requiring an engineering degree or detailing any duties related to engineering, which support's Plaintiff's claim that the misrepresentation to Topew International was not material to Defendant. *See* Dkt. No. 105-6; Dkt. No. 105-9. As the Ontario Court of Appeals held in *Sagl v. Cosburn, Griffiths & Brandham Insurance Brokers Ltd.*, [2009] ONCA 388, "[w]hether a misrepresentation or non-disclosure is material is a matter of fact to be determined by the trier of fact[.]" *Id.* at ¶ 52. Accordingly, the Court will allow a jury to determine whether Plaintiff's representation that he had a bachelor's degree in engineering in 2005 was material to the parties' decision to enter into the 2012 Agreement.

## V. CONCLUSION

For the reasons stated herein, the Court will **DENY** Defendant's Motion for Summary Judgment [94].

IT IS SO ORDERED.

Dated: November 17, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge